IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**INSURASOURCE, INC.**                                                                              **PLAINTIFF**

**VERSUS**                                                  **CIVIL ACTION NO. 2:11cv49-KS-MTP**

**THE PHOENIX INSURANCE COMPANY**                                               **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment [35] of Defendant The Phoenix Insurance Company.  Having considered the parties' submissions, the record, and the applicable law, the Court finds that the motion should be granted.

## I.  BACKGROUND

Plaintiff Insurasource, Inc. ("ISI") is a Mississippi corporation that finances insurance premiums.  Under the typical terms of ISI's finance agreements, policyholders are required to make regular monthly payments to ISI, and they grant ISI a security interest in any unearned premiums that may be refunded upon cancellation of the policy.  They also grant ISI power of attorney with respect to cancellation of the policy.  Therefore, if a policyholder defaults on its obligations to ISI, ISI can cancel the policy at issue and collect the unearned premiums.  ISI typically provides the insurance carrier with notice of the finance agreement, the power of attorney, and the purported security interest in any unearned premiums.

ISI contends that it entered into two premium finance agreements with Universal Ready Mix, Inc. ("Universal"), an insured of Defendant The Phoenix Insurance

1

Company ("Phoenix"), pertaining to Insurance Policy No. BA3865M78309 with effective dates of January 29, 2010 to January 29, 2011. (*See* Premium Finance Agreements [39-1].) ISI had no direct contact with Universal with respect to the execution of the Premium Finance Agreements. Instead, ISI relied on the representations of John A. Rocco ("Rocco"), an insurance broker based in Florham Park, New Jersey, concerning Universal's purported willingness to obtain financing for the issuance of Policy No. BA3865M78309. ISI contends that Rocco was an authorized agent for Phoenix, and that it made two payments to him in order to finance Policy No. BA3865M78309: one payment in the amount of $35,232.49 on January 29, 2010, and a second payment in the amount of $36,479.00 on February 19, 2010. ISI asserts that it expected Rocco to forward the payments to Phoenix.

     ISI alleges that in conjunction with making each of the aforementioned payments, it sent to Phoenix and Phoenix's general agent, the Norman-Spencer Agency, Inc. ("Norman-Spencer"), a Notice of Financed Premium ("Notice") [Doc. No. 39-3], which advised that ISI had entered into a contract with Universal to finance premiums for Policy No. BA3865M78309; that the premium payment would be made to Rocco; that Universal had assigned to ISI any unearned premiums that would become available in the event of policy cancellation; and, that ISI had the right to cancel the insurance policy if Universal defaulted under the finance agreement. Each Notice also requested that the "Insurer" sign and return the document, acknowledging that the insurance policy description was correct and agreeing to pay ISI any unearned premiums upon policy cancellation. ISI never received a signed copy of either Notice [39-3] from Phoenix.

2

Universal's first payment under the Premium Finance Agreements [39-1] was due on February 7, 2010. ISI did not receive any payment on that date. Thus, on February 12, 2010, ISI sent a Notice of Intent to Cancel Insurance [1-1 at ECF p. 19] to Universal advising that Policy No. BA3865M78309 would be cancelled if payment was not received by February 24, 2010. No payment was received by February 24, and thus, ISI sent a Notice of Cancellation [39-6] to Universal, Rocco, Norman-Spencer, and Phoenix, purporting to cancel Policy No. BA3865M78309.

No showing has been made that Rocco forwarded ISI's premium payments to Phoenix. Further, it does not appear that Policy No. BA3865M78309 with effective dates of January 29, 2010 to January 29, 2011, ever existed. The New Jersey Department of Banking and Insurance has revoked Rocco's insurance license as a result of its finding that he committed over twenty counts of fraud relating to premium financing. (*See* Final Order [35-7].) By all accounts then, this lawsuit arises from another of Rocco's efforts to misappropriate a finance company's premium payments.[1]

On January 5, 2011, ISI filed suit against Phoenix in the Circuit Court of Lamar County, Mississippi. (*See* Complaint [1-1].) ISI seeks $82,223.62 in unearned premiums from Phoenix pursuant to three legal theories: 1) Phoenix has a statutory duty to return the unearned premiums; 2) Phoenix has a contractual duty to return the unearned premiums; and 3) Phoenix has a duty to return the unearned premiums because of Rocco's actual, apparent, and/or implied authority to receive the premium payments on Phoenix's behalf. (*See* Complaint [1-1], Counts I-III.) ISI also alleges that

---

[1] ISI has filed at least three separate lawsuits against other insurers relating to its payment of premiums to Rocco. *See* S.D. Miss. Case Nos. 2:11cv48; 2:11cv73; 2:11cv82.

Phoenix is obligated to pay a 5 percent monthly penalty for failing to return the unearned premiums pursuant to N.J. Stat. Ann. § 17:29C-4.1.  (*See* Complaint [1-1], Count IV.)

On March 3, 2011, Phoenix, a Connecticut company, removed the proceeding to this Court on the basis of diversity of citizenship jurisdiction under Title 28 U.S.C. § 1332.  On July 30, 2012, Phoenix filed its Motion for Summary Judgment [35].  The motion has been fully briefed and the Court is ready to rule.

## II.  DISCUSSION

### A.  Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted), *cert. denied*, 131 S. Ct. 2972 (2011).  The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial."  *Id.*  "'An issue is material if its resolution could affect the outcome of the action.'"  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). Summary judgment is mandatory "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2103 (2012) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

**B.    Analysis**

The parties disagree over what issues control the determination of the Motion for Summary Judgment [35]. Phoenix contends that all of ISI's claims fail because Policy No. BA3865M78309 never existed and the Premium Finance Agreements are not valid contracts. ISI claims that the central issue precluding summary judgment is whether Rocco was Phoenix's agent. The Court finds that Rocco's alleged authority to act as Phoenix's agent is relevant to Count III of the Complaint, while the existence *vel non* of Policy No. BA3865M78309 and the validity *vel non* of the Premium Finance Agreements are central to ISI's remaining claims for relief.

5

### 1.     Counts I and IV of the Complaint

ISI argues that payment to Rocco constituted payment to Phoenix by operation of N.J. Stat. Ann. § 17:22-6.2a.  (*See* ISI's Resp. in Opp'n [39] at p. 2.)  Section 17:22-6.2a provides:

> Any insurer which delivers in this State to any insurance broker a contract of insurance . . . pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf payment of any premium which is due on such contract at the time of its issuance or delivery or payment of any installment of such premium or any additional premium which becomes due or payable thereafter on such contract, provided such payment is received by such broker within 90 days after the due date of such premium or installment thereof or after the date of delivery of statement by the insurer of such additional premium.

N.J. Stat. Ann. § 17:22-6.2a.  This statute "was enacted to protect the insurance buying public from the misappropriation, conversion, or other misconduct of an insurance broker in those instances where an insurer uses the broker to effect the delivery of the policy of insurance and to collect the premiums due for it."  *Kubeck v. Concord Ins. Co.*, 248 A.2d 131, 135 (N.J. Super. Ct. Ch. Div. 1968), *aff'd*, 259 A.2d 473 (N.J. Super. Ct. App. Div. 1969).  It "clearly creates a principal-agent relationship between the insurer and the broker in those instances where the insurer uses the broker to deliver a policy of insurance and collect and remit premiums due thereon."  *Id.*

Before such an agency relationship can exist, though, there has to actually be a contract of insurance.  *Millner v. N.J. Ins. Underwriting Ass'n*, 475 A.2d 653, 655 (N.J. Super. Ct. App. Div. 1984).  The statute clearly provides that the insurer must deliver a "contract of insurance" to the broker to authorize the broker to receive payments on its behalf.  *Id.*  "The pivotal inquiry is not so much whether a 'policy' was physically

delivered, but whether an actual contract of insurance existed." *Id.* Section 17:29C-4.1, under which ISI seeks a 5 percent monthly penalty for Phoenix's failure to return the unearned premiums, also presupposes the existence of "an insurance policy or contract . . . ." N.J. Stat. Ann. § 17:29C-4.1.

Phoenix contends that Policy No. BA3865M78309 does not exist and that ISI is unable to prove the following:

(i)     Universal sought a policy of insurance to become effective in or around January 2010 and/or an endorsement to take effect in or around February 2010 from Phoenix.

(ii)    Anyone submitted any application for coverage to Phoenix or any other entity with authority to bind Phoenix for this time period.

(iii)   Anyone conducted any underwriting relating to the subject policy.

(iv)    Phoenix offered coverage to Universal by way of the subject policy.

(v)     Universal accepted an offer of coverage through a policy bearing "BA3865M78309" as the policy number, fraudulent or otherwise, from Phoenix.

(vi)    Phoenix bound coverage under the subject policy.

(vii)   Rocco bound coverage under the subject policy.

(viii)  Universal was bound by the subject policy.

(ix)    Universal paid consideration for the subject policy.

(x)     Phoenix received consideration from Universal for the subject policy.

(*See* Phoenix's Mem. in Supp. of Mot. for SJ [36] at p. 8.)

ISI counters that Phoenix did issue Policy No. BA3865**N**78309 to Universal and that the purported nonexistence of Policy No. BA3865**M**78309 is a distinction without a difference. ISI further contends that the difference in policy numbers is a mere scrivener's error. ISI's arguments are not well taken.

The Complaint clearly relies on the existence of Policy No. BA3865**M**78309 with effective dates of January 29, 2010 to January 29, 2011. (*See* Complaint [1-1] at ¶ 11.) The Court has not been presented with a copy of this alleged insurance policy. Instead, the record contains copies of declarations pages from a policy of insurance issued by Phoenix to Universal numbered BA3865**N**78309 with effective dates of April 7, 2009 to April 7, 2010. (*See* [Doc. No. 39-8].) It would have been impossible for Phoenix to finance Policy No. BA3865**N**78309, with an effective initial date of April 7, 2009, by prepaying premiums in January and February of 2010. (*See* Complaint [1-1] at ¶¶ 13, 24.)

Furthermore, ISI has presented no proof that the difference in policy numbers is the result of a scrivener's error. ISI's conclusory allegation, as opposed to a sworn affidavit from the scrivener explaining the error, fails to create a genuine issue of material fact. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (providing that mere conclusory allegations will not preclude summary judgment). In the absence of such proof, the Court finds that no reasonable jury would infer the difference in policy numbers to result from a scrivener's error, as opposed to Rocco's acts of fraud.

ISI's failure to show that it financed Policy No. BA3865**N**78309 (the actual policy), as opposed to Policy No. BA3865**M**78309 (the alleged policy), is an important

distinction in this case.  The nonexistence of Policy No. BA3865**M**78309 precludes any finding that payment to Rocco in January and February of 2010 was payment to Phoenix by operation of Section 17:22-6.2a,[2] or that ISI is entitled to any unearned premiums or interest on unearned premiums pursuant to Section 17:29C-4.1.[3]  As a result, the Court finds that Phoenix is entitled to summary judgment on ISI's statutory claims for relief under Counts I and IV of the Complaint.

### 2.   Count II of the Complaint

The Complaint asserts that when ISI financed Universal's premiums for Policy No. BA3865M78309, it "stepped into the shoes of Universal for all payments and set-offs while leaving the insurer-insured relationship between Phoenix and Universal intact."  (Complaint [1-1] at ¶ 46.)  This claim requires the existence of a valid insurance policy, providing Universal with the right to unearned premiums upon policy cancellation, and a valid agreement between ISI and Universal, allowing ISI to recover any unearned premiums in place of Universal.  As noted above, Policy No. BA3865**M**78309 does not appear to exist and it would have been impossible for ISI to finance Policy No. BA3865**N**78309.  As will be addressed below, the Court finds that ISI has failed to present sufficient evidence enabling a jury to conclude that the Premium Finance Agreements [39-1] are valid and enforceable contracts.

---

[2] New Jersey courts hold that Section 17:22-6.2a does not create an agency relationship between the broker and the insurer in the absence of a valid contract of insurance.  *See Millner*, 475 A.2d at 655; *Commercial Union Assurance Cos. v. State Farm Mut. Auto. Ins. Co.*, 385 A.2d 1286, 1289-90 (N.J. Super. Ct. Law Div. 1978).

[3] This statute also requires the existence of "an insurance policy or contract . . . ."  N.J. Stat. Ann. § 17:29C-4.1.

Six elements are required for the existence of a valid contract under Mississippi law: "'(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.'" *Adams Cmty. Care Center, LLC v. Reed*, 37 So. 3d 1155, 1158 (¶ 7) (Miss. 2010) (quoting *Grenada Living Ctr., LLC v. Coleman*, 961 So. 2d 33, 36-37 (Miss. 2007)).[4]  Phoenix asserts that ISI cannot meet all of these elements because i) no evidence has been presented establishing that Universal intended to enter into the Premium Finance Agreements ("PFAs"); ii) no evidence has been presented establishing that an authorized officer of Universal signed the PFAs; iii) ISI has admitted that Vito Logiudice, Universal's only known officer, did not sign the PFAs; iv) ISI has admitted that Rocco signed the PFAs in the spaces where an authorized representative of Universal was to sign; and, v) no evidence has been presented establishing that Universal authorized Rocco to sign the PFAs on its behalf. (*See* Phoenix's Mem. in Supp. of Motion for SJ [36] at p. 5.)  ISI has failed to address Phoenix's assertions or come forward with any evidentiary support for the validity of the PFAs, such as an affidavit from a Universal representative stating that the company entered into an agreement with ISI.

Phoenix has met its burden of showing the absence of evidentiary support for the first and fifth necessary elements of a valid contract with respect to the PFAs.  In turn,

---

[4] Generally, district courts apply the substantive law of the forum state when jurisdiction is based on diversity of citizenship.  *See, e.g., Ill. Cent. R.R. Co. v. Cryogenic Transp., Inc.*, 686 F.3d 314, 316 (5th Cir. 2012); *Citigroup, Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011).  The parties have not argued that any other state's law is relevant to the determination of the validity of the Premium Finance Agreements.  Further, each Premium Finance Agreement form provides that the "laws of the State of Mississippi shall govern this Agreement." (*See* Premium Finance Agreements [39-1 at ECF pp. 2, 5].)

ISI has failed to meet its burden of presenting specific facts showing that there is a genuine issue for trial as to these issues.  Without the PFAs, ISI has no "security interest in all unearned premiums in connection with the Policy"[5] and, in turn, no contractual right to obtain unearned premiums from Phoenix.  Therefore, summary judgment in favor of Phoenix is warranted as to Count II of the Complaint.

### 3. Count III of the Complaint

Count III of the Complaint is dependent upon Rocco's alleged "actual, apparent, and/or implied authority to do all acts on behalf of Phoenix which were incidental to the sale of the Policy and the collection of premium payments . . . ."  (*See* Complaint [1-1] ¶ 55.)  In response to the Motion for Summary Judgment [35], ISI chiefly claims that Phoenix is estopped from denying that Rocco was its agent because it ratified his actions by its silence and inactivity.  ISI's ratification argument tracks this Court's opinion in a separate action where ISI presented sufficient evidence to create a jury issue regarding whether an insurer ratified Rocco's actions under Mississippi and New Jersey law.  *See Insurasource, Inc. v. Fireman's Fund Ins. Co.*, No. 2:11cv82, 2012 WL 774934 (S.D. Miss. Mar. 8, 2012).  Phoenix's principal reply to ISI's ratification claim is that it was raised for the first time in opposition to summary judgment and, for that reason, should be denied.

There are two lines of Fifth Circuit precedent addressing claims raised for the first time in opposition to summary judgment.  One line of precedent counsels that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."  *Cutrera v. Bd. of Supervisors of*

---

[5] (*See* Complaint [1-1] at ¶ 47.)

*La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)).  The other line of authority provides that a claim raised for the first time in response to a motion for summary judgment should be treated as a motion to amend the complaint.  *See Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir. 2008) (citations omitted).  ISI's ratification theory is not properly before the Court under either line of precedent.

Mississippi law "allows a principal to ratify the agent's unauthorized acts and, upon doing so, become[] bound."  *Kinwood Capital Group, L.L.C. v. BankPlus*, 60 So. 3d 792, 796 (¶ 13) (Miss. 2011).  "[U]nder some circumstances, a principal's *inaction* can result in ratification, but only where the principal has notice that others will infer from his silence that he intends to manifest his assent to act.  *Id.* at 797 (¶ 14) (citing Restatement (Third) of Agency § 4.01 cmt. f (2005)).  Under New Jersey law, "[r]atification requires intent to ratify plus full knowledge of all the material facts." *Thermo Contracting Corp. v. Bank of N.J.*, 354 A.2d 291, 296 (N.J. 1976) (citation omitted).  "Ratification may be express or implied, and intent may be inferred from the failure to repudiate an unauthorized act; from inaction; or from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act."  *Id.* (internal citations omitted).  In reviewing the Complaint [1-1], the Court notes an absence of well-pleaded factual allegations sufficient to state a claim for ratification under Mississippi or New Jersey law.  Thus, pursuant to the Fifth Circuit's decision in *Cutrera*, ISI's ratification argument should not be considered as a basis for denial of Phoenix's Motion for Summary Judgment.  *Cf. Deleon v. City of Haltom City*, No.

4:02cv1045, 2003 WL 21356791, at *4 n.4 (N.D. Tex. June 10, 2003) (refusing to consider plaintiff's theory of ratification raised as an afterthought in opposition to a motion to dismiss), *aff'd*, 106 Fed. Appx. 909 (5th Cir. 2004).

The Fifth Circuit's decision in *Stover* fails to support consideration of ISI's ratification argument at this time because good cause has not been shown for amendment of the pleadings. Where the deadline to amend pleadings has expired, such as in this case, Rule 16(b) requires that "good cause" be shown before Rule 15(a)'s more liberal standard is applied. *See S&W Enters., L.L.C. v. Southtrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003). The following four factors are relevant to a demonstration of good cause: "1) the explanation for the failure to move timely for leave to amend; 2) the importance of the amendment; 3) potential prejudice in allowing the amendment; and 4) the availability of a continuance to cure such prejudice." *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005) (citing *S&W Enters., L.L.C.*, 315 F.3d at 536). ISI has offered no explanation as to why its ratification claim was not raised sooner. Further, this matter is set for trial on January 7, 2013, and Phoenix would be unfairly prejudiced if an additional claim were allowed at this stage of the proceedings. A continuance would unnecessarily delay proceedings and result in additional litigation expenses. On the whole, consideration of ISI's ratification claim in opposition to Phoenix's Motion for Summary Judgment is not supported by good cause.[6]

---

[6] ISI's response to Phoenix's Motion for Summary Judgment also alleges that "Phoenix is vicariously liable for Rocco's unlawful actions and omissions." (*See* ISI's Resp. in Opp'n [39] at p. 4.) The Court will not consider this claim for the same reasons it is not considering ISI's ratification theory of recovery.

The Court will now consider whether summary judgment is appropriate as to the actual theories of recovery encompassed within Count III of the Complaint, i.e., Rocco's purported actual, apparent, and/or implied authority to act on behalf of Phoenix.  The Court will apply Mississippi and New Jersey law to these issues since ISI relies on both in opposition to summary judgment and since there are no outcome determinative differences between the two.  *See Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 559 (5th Cir. 2011) (providing that a choice of law analysis is unnecessary where the application of two bodies of law leads to the same result).

### a.   Actual or Implied Authority

It appears to be undisputed that there was no actual agency relationship between Rocco and Phoenix.  Phoenix's Rule 30(b)(6) representative testified that Norman-Spencer was Phoenix's agent for purposes of the issuance of Policy No. BA3865**N**78309 and that the company did not "know John Rocco."  (*See* Phoenix Depo. [39-2] at 7:5-19.)  ISI has not presented any evidence showing that Phoenix gave Rocco, as opposed to Norman-Spencer, any express authority to enter into premium finance transactions, collect premiums, or act on its behalf in any manner.  "[W]ithout express authority to act as an agent, there can be no implied authority."  *Mariner Health Care, Inc. v. Ferguson*, No. 4:04cv245, 2006 WL 1851250, at *4 (N.D. Miss. June 30, 2006); *see also The Miss. Bar v. Thompson*, 5 So. 3d 330, 336 (¶ 25) (Miss. 2008) (noting an absence of implied authority where an employee's actions were "not necessary, proper, and usual *in the exercise of his express duties*") (emphasis added; citation and internal quotation marks omitted); *accord Sylvan Learning Sys., Inc. v.*

14

*Gordon*, 135 F. Supp. 2d 529, 542 (D.N.J. 2000) ("[A]n agent has implied authority to undertake all transactions necessary to fulfill the duties required of an agent *in exercise of express authority*.") (emphasis added and citation omitted); *Nat'l Premium Budget Plan Corp. v. Nat'l Fire Ins. Co. of Hartford*, 234 A.2d 683, 718 (N.J. Super. Ct. Law Div. 1967) (providing that implied authority extends from express authority), *aff'd*, 254 A.2d 819 (N.J. Super. Ct. App. Div. 1969). There is no genuine issue of material fact precluding summary judgment against ISI's claim that Rocco had actual or implied authority to act on behalf of Phoenix.

### b. Apparent Authority

"Apparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." *Mladineo v. Schmidt*, 52 So. 3d 1154, 1167 (¶ 49) (Miss. 2010) (citation omitted). The following three factors must be met to recover under the theory of apparent authority: "(1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance." *Id.* A party seeking to establish apparent authority under New Jersey law must meet the following similar elements:

> (1) that the appearance of authority has been created by the conduct of the alleged principal and it cannot be established alone and solely by proof of [conduct by] the supposed agent; (2) that a third party has relied on the agent's apparent authority to act for a principal; and (3) that the reliance was reasonable under the circumstances.

*AMB Prop., LP v. Penn Am. Ins. Co.*, 14 A.3d 65, 72 (N.J. Super. Ct. App. Div. 2011) (citing *Mercer v. Weyerhaeuser Co.*, 735 A.2d 576 (N.J. Super. Ct. App. Div. 1999)).

ISI does not identify any acts or conduct on the part of Phoenix indicating Rocco's authority to act on its behalf.  Instead, ISI relies on Phoenix's silence or inactivity in response to the January 29, 2010 and February 19, 2010 Notices of Financed Premium [39-3].  The Court has identified only one Mississippi appellate decision partially relying on a purported principal's inaction in finding the first element of apparent authority met.  *See Barnes, Broom, Dallas & McLeod, PLLC v. Estate of Cappaert*, 991 So. 2d 1209 (Miss. 2008).[7]

The facts underlying the court's ruling in *Estate of Cappaert* are clearly distinguishable from the present case.  In *Estate of Cappaert*, a family accountant was found to have the apparent authority to retain an attorney to represent a bank where the bank made no objection to the representation until the attorney was terminated.  991 So. 2d at 1212 (¶¶ 11-14).  The court held that the bank had ratified the family accountant's actions by allowing the representation to continue for approximately eleven months, during which time the attorney sent the bank monthly statements and the bank's trustee signed several court pleadings.  *Id.* at 1211 (¶ 3), 1212 (¶ 11).  In this case, ISI has not shown that a Phoenix representative signed any document ratifying Rocco's issuance of Policy No. BA3865M78309 or Rocco's receipt of premiums from ISI.  Moreover, no showing has been made that Phoenix knew that Rocco was purporting to issue insurance policies and collect premiums on its behalf for any

---

[7] No similar New Jersey appellate decision has been identified.

continuous period of time, such as the eleven-month period at issue in *Estate of Cappaert*.[8]

Putting aside the inapplicable case of *Estate of Cappeart*, ISI has shown no "acts or conduct" on the part of Phoenix indicating Rocco's authority to take action on its behalf. *Reed*, 37 So. 3d at 1160 (¶ 14) (Miss. 2010). The absence of such proof negates the first required element of apparent authority. *See id.* (no apparent authority where the record failed to show any action taken by the purported principal indicating another's authority); *The Miss. Bar*, 5 So. 3d at 336 (¶ 29) (same); *Patriot Commercial Leasing Co. v. Jerry Enis Motors, Inc.*, 928 So. 2d 856, 865 (¶ 35) (Miss. 2006) (same); *accord Gordon*, 135 F. Supp. 2d at 546 (no apparent authority where plaintiff failed to show "some voluntary act or manifestation" on the part of the defendants that created the appearance of authority); *Nat'l Premium Budget Plan Corp.*, 254 A.2d at 820-21 (insurer "did not knowingly (or at all) voluntarily place" a purported agent in a position that reflected his authority to act on its behalf).

Even if a jury issue existed as to the first element of apparent authority, the Court finds that no rational jury could conclude that ISI made premium payments to Rocco in reasonable reliance on Phoenix's alleged silence in response to the January 29 or February 19, 2010 Notice of Financed Premium [39-3] ("Notice"). According to the Complaint, ISI made its first premium payment to Rocco on January 29, 2010, the same date it mailed the first Notice to Phoenix. (*See* Complaint [1-1] at ¶¶ 13, 21, 36.) ISI

---

[8] This circumstance also distinguishes the present case from the Court's decision in *Insurasource, Inc. v. Fireman's Fund Ins. Co.*, 2012 WL 774934. There, the insurer's knowledge that Rocco was placing its insurance policies for approximately five (5) years before the subject dispute arose supported the existence of a jury issue with respect to ISI's ratification claim. *See Insurasource, Inc.*, 2012 WL 774934, at *6.

could not have relied (reasonably or otherwise) on Phoenix's purported failure to respond to the first Notice on January 29 since it apparently paid Rocco and mailed the Notice on that date.  The same rationale applies to ISI's second Notice since it was allegedly mailed to Phoenix on February 19, the same date ISI made its second premium payment to Rocco.  (*See* Complaint [1-1] at ¶¶ 24, 30, 36.)

Moreover, ISI cannot be said to have "reasonably" relied on Phoenix's silence in response to the first Notice before making its second payment to Rocco on February 19, in order to finance an insurance policy on behalf of Universal.  First, Universal had purportedly defaulted on its repayment obligations to ISI by February 12.  (*See* Complaint [1-1] at ¶ 31.)  Second, ISI's Notice specifically requested that the Insurer take affirmative action by signing and returning a copy of the document, agreeing to pay ISI any unearned premiums and advising of any discrepancies, and ISI has admitted that it never received a copy of any Notice from Phoenix.  (*See* ISI's Interrog. Resps. [35-6] at p. 8.)  It is not reasonable to request affirmative action and then act upon mere silence or inaction.  Therefore, ISI is unable to meet the reasonable reliance element of apparent authority under Mississippi or New Jersey law.  *See Mladineo*, 52 So. 3d at 1167 (¶ 49); *AMB Prop., LP*, 14 A.3d at 72.  As such, ISI has not presented sufficient evidence to preclude summary judgment with respect to its apparent authority theory of recovery.

### III.  CONCLUSION

Based on the foregoing, summary judgment in favor of Phoenix is appropriate in this case.

IT IS THEREFORE ORDERED AND ADJUDGED that The Phoenix Insurance Company's Motion for Summary Judgment [35] is granted.  A separate judgment will be entered this date in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 5th day of December, 2012.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE